J-A29020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.L.T.B-G., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: V.S., FATHER | : : : : : : : | |
| | : | No. 874 WDA 2023 |

Appeal from the Order Entered June 26, 2023
In the Court of Common Pleas of Allegheny County at
Docket No(s): CP-02-AP-0000191-2020

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED: February 9, 2024**

V.S. (Father) appeals the decision of the Allegheny County Court of Common Pleas granting the petition filed by the Allegheny County Office of Children, Youth and Families (CYF) to involuntarily terminate his rights to his 4-year-old son E.L.T.B.-G. (the Child), pursuant to the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), (b). [1, 2]  After careful review, we affirm.

---

[1] The matter returns to this Court after remand. **See Interest of E.L.T.B-G.**, 2023 WL 2923994 (Pa. Super. April 13, 2023) (non-precedential decision).  In our previous decision, we directed the trial court to ascertain whether the Child was adequately represented by counsel, pursuant to 23 Pa.C.S.A. § 2313(a) and **In re Adoption of K.M.G.**, 240 A.3d 1218 (Pa. 2020).  After a hearing, the court established that there was no conflict in the Child's representation.

[2] C.B. (Mother) died in October 2021 during the dependency proceedings.  These proceedings also involved K.S., the Child's half-sibling.  That sibling has no relation to Father and is not the subject of this appeal.

The relevant factual and procedural history is as follows. The Child was born in July 2018. He was removed from Mother's care within the week and placed in foster care. The Child has remained in the same placement since. At the time of the Child's birth, Mother identified an individual as the father; this individual signed an acknowledgment of paternity and was named on the birth certificate. Several months later, in January 2019, this individual's paternity was ruled out by genetic testing. The Child was adjudicated dependent in March 2019. Mother named a second individual as a prospective father, but this second individual was also ruled out by genetic testing in January 2020.

The record suggests that Mother did not "formally" identify Father as a prospective father until September 2020. However, CYF contacted Father on July 28 and on August 7, 2020. At the time, Father was incarcerated at the Allegheny County Jail. CYF conferenced with Father on September 30, 2020. Father did not acknowledge paternity, but requested genetic testing, which the court ordered almost five months later on February 24, 2021.

Notably, the paternity test did not occur until November 8, 2021, an additional seven months later. In the interim, Mother passed away. According to CYF, the cause for the testing delay was the jail's COVID-19 protocols; personnel could not go to the jail to do the testing. Then, once the test was scheduled, Father moved from the Allegheny County Jail to Federal Correctional Institute (FCI) Cumberland in Maryland. For a time, CYF did not know where Father was transported. (For his part, Father did not tell the

Agency.) After the testing took place, however, the results confirming Father's parenthood came back quickly, on November 21, 2021.

After paternity was confirmed, Father requested that his mother (Paternal Grandmother) be considered as a placement option until his anticipated release in 2025. CYF reached out to Paternal Grandmother in November 2021, but the Agency did not hear back until approximately two weeks before the March 2022 termination hearing. Paternal Grandmother ultimately said she thought it best that the Child remain with his current foster parents so as to not disrupt the Child's life.

Meanwhile, CYF had filed a petition to terminate parental rights in December 2020. The petition was amended, to include Father, in April 2021. The orphans' court held a termination hearing on March 18, 2022. Father was scheduled to appear remotely, but because of an issue at the prison, Father could not be reached. Counsel for Father sought a continuance, which the court denied. However, the court subsequently granted Father's request to reopen the record so that he could testify, which he did on April 29, 2022.[3] On July 11, 2022, the court issued an order granting the petition, and terminating Father's rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

Father appealed. Without reaching the merits of Father's appeal, this Court remanded the matter with instructions that the trial court determine

---

[3] Father did not appeal the court's process.

whether the Child had adequate representation. The trial court complied, and, following a hearing, determined that no conflict exists between the Child's best interests and legal interests. The court then re-entered its termination order, which was ultimately docketed on June 26, 2023. Father timely filed this appeal, raising the same issues:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Father's parental rights, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of the Child, pursuant to 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 6.

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate could should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). We reiterate that the abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted).

We need only agree with the lower court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the court's decree. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*); *see also C.S.*, 761 A.2d at 1201. Instantly, the court terminated Father's rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). We review the court's decision to terminate under Section 2511(a)(2).

That subsection provides:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued *incapacity*, abuse, neglect *or refusal* of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2) (emphasis added).

To terminate parental rights under Section 2511(a)(2), the Agency must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without

essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *C.M.K.*, 203 A.3d at 262. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

As applied to a Section 2511(a)(2) inquiry, our Supreme Court has long held that "incarceration neither compels nor precludes termination." *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). However, incarceration is relevant to determine a parent's continued incapacity:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as *highly relevant* to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2); [*In re: E.A.P.,* 944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*S.P.*, 47 A.3d at 830 (emphasis added).

On appeal, Father concedes that his incarceration constituted an incapacity which has caused the Child to go without parental care. Father is

scheduled to be released from prison in March 2025, but he explained there was a possibility that he could be released sooner, in November 2023, if given a "compassionate release." [4] On appeal, Father's argument is that the court failed to consider that the incapacity could be remedied once he is released from prison, which could have been in a matter of months.

Upon review, we discern no abuse of discretion. Preliminarily, we note that this case's procedural history somewhat distorts Father's argument. The court originally terminated Father's rights in July 2022 – at that time, Father's earliest potential release date was still 16 months away. When the trial court re-entered its termination order (following remand) in June 2023, Father's potential release was "only" five or six months away. Although the length of the remaining confinement is "highly relevant," (**S.P., supra**) it was within the trial court's discretion to weigh this factor in determining whether Father's incapacity could be remedied. The court was unpersuaded, and we cannot hold that the court's decision here was manifestly unreasonable. After all, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." **In re Adoption of C.M.**, 255 A.3d 343, 364 (Pa. 2021) (citations omitted).

Moreover, we must also observe that Father took no action to be a parent while incarcerated. In citing Father's lack of efforts while incarcerated,

---

[4] Father testified that an inmate's potential to reunify with a child would be a factor when deciding whether the inmate warrants an early release.

we are careful not to conflate the Section 2511(a)(1) analysis with the (a)(2) analysis. **See S.P.**, 47 A.3d at 828-29 (discussing **In re: Adoption of McRay**, 331 A.2d 652 (Pa. 1975)). Although the analyses somewhat overlap, our focus is not whether Father exercised reasonable firmness to resist obstacles to parenting, which speaks to the larger question of whether Father evidenced a settled purpose of relinquishing his claim. **See id.**; **see also** 23 Pa.C.S.A. § 2511(a)(1). Instead, we note Father's inaction because it informs our understanding that Father's incarceration was not the sole basis for the trial court's determination under Section 2511(a)(2).

Once Father learned of the possibility of his parenthood, he requested a paternity test. In the interim, Father took no actions to suggest that he was interested in parenthood, nor did Father prepare for the possibility of his parenthood. The CYF caseworker explained that the Agency will establish reunification goals if a prospective father acknowledges paternity – or even the possibility of paternity. In this case, CYF established "blanket" goals, which included maintaining contact with CYF and to have contact with the Child. However, Father did not contact the Child, nor was he in communication with CYF. His failure to contact CYF partially contributed to the delay in paternity testing; Father did not tell CYF he was transferred to FCI Cumberland, and his address was temporarily unknown.

More importantly, once paternity was established, Father still took no action except to request that Paternal Grandmother be the caregiver. Paternal Grandmother declined. As the court noted, Father did not send

correspondence, gifts, or any other communication to the Child to demonstrate his interest in parenthood. Indeed, the Child has never met Father. The existence of these facts supports the inference that, insofar as Father might be capable of parenting upon his release from prison, his release would not necessarily remedy his refusal to parent. For these reasons, we conclude the trial court did not err or abuse its discretion when finding that CYF met its burden under Section 2511(a)(2). Given this, we need not address the other subsections under Section 2511(a). Father's first issue merits no relief.

As noted above, a trial court only reaches the Section 2511(b) analysis after it decides there are grounds for termination under Section 2511(a). *C.M.K.*, 203 A.3d at 261-62. In Father's second appellate issue, he claims the court never should have reached this second step of the bifurcated analysis under (b), because termination was not warranted under (a). In other words, Father does not separately challenge the court's substantive findings under Section 2511(b), but merely preserves this issue as a housekeeping measure.

Because the trial court's decision to terminate under Section 2511(a)(2) was proper, the court correctly proceeded to Section 2511(b). Thus, Father's second appellate issue is meritless. We may end our review here, but even if Father meant to challenge the court's underlying Section 2511(b) analysis, we would still conclude that Father merits no relief.

Briefly, the trial court determined that because Father never met the four-year-old Child, there was no necessary and beneficial parental bond worth preserving; the Child is in a pre-adoptive foster home; and has bonded to his foster family. ***See generally In the Interest of K.T.***, 296 A.3d 1085, 1105-1114 (Pa. 2023). Thus, the trial court did not err or abuse its discretion when it ruled that termination would best serve the Child's needs and welfare under Section 2511(b).

To conclude: the trial court did not err or otherwise abuse its discretion when it concluded that termination was warranted under Section 2511(a)(2). The court was not required to use Father's earliest possible release date. But even if the trial court utilized that date, we would still find that termination was proper. Moreover, because the court determined that CYF proved termination was warranted under Section 2511(a), the court was right to proceed to Section 2511(b). Assuming Father meant to challenge the court's substantive findings under Section 2511(b), we would nevertheless conclude that the court acted within its discretion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/09/2024

- 11 -